IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY FRANCES ANTWEIL,
  (In re: Alan J. Antweil and
  Mary Frances Antweil, Debtors,
  Bankruptcy Case No. 11-86-10254 MA)

       Appellant,

vs.                                                     Civ. No. 99-1277 LH/WWD

Federal Recovery, Inc.
Office of the United States Trustee,
David C. Bintliff & Co., Inc.,
Estate of David C. Bintliff, and
Wayman Buchanan,

       Appellees

## MAGISTRATE JUDGES'S PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION.

    1. This matter is before the Court upon an appeal from an Order entered by the Bankruptcy Court on October 20, 1999. The Order appealed from denied the motion filed by the debtor/appellant who sought to obtain certain unclaimed funds which had been placed in the registry of the Court after attempted distribution. The District Judge to whom this appeal was assigned referred this matter for proposed findings and recommended disposition pursuant to 28

U.S.C. §636(b)(1)(B) and <u>Virginia Beach Savings & Loan Association v. Wood</u>, 901 F.2d 849 (10th Cir. 1990).

## **PROPOSED FINDINGS**

2. <u>Standard of Review</u>**.** When reviewing a decision of the Bankruptcy Court, this Court functions as an appellate court and is authorized to affirm, reverse or modify the Bankruptcy Court's ruling or remand the case for further proceedings. <u>Bartmann v. Maverick Tube Corp.</u>, 853 F.2d 1540, 1543 (10th Cir. 1988). This Court reviews legal determinations on a de novo basis and factual findings under a clearly erroneous standard. Bankr. R. 8013; <u>Sender v. Hegland Family Trust</u>, 48 F.3d 470, 472 (10th Cir. 1995).

3. The debtor, now represented solely by appellant/debtor Mary Frances Antweil (Debtor), voluntarily sought relief under Chapter 11 in February 1986. A reorganization plan, the Trustee's First Amended Joint Liquidating Plan of Reorganization ("Plan") was filed by Elliott Johnson ("Johnson"), Chapter 11 trustee, on May 16, 1988; and was confirmed by the Court in an Order entered May 16, 1988. Johnson was named as the disbursing agent under the plan, and several times between 1989 and 1995, he amended the mailing matrix to add new parties in interest. Johnson was authorized and directed to take such steps as are necessary and proper to carry out the provisions of the plan. On or about January 6, 1994, Johnson paid the allowed claims of Class 3A (unsecured claims of $500.00 or less) amounting to $22,701.34, which, according to the plan, were to be paid "in cash as soon as practicable but no later than 180 days after the Effective Date of the Plan." On December 12, 1997, Johnson moved for a final decree which set forth the proposed payment to Class 3B , the allowed general unsecured claims against

the debtor. The funds were disbursed, apparently sometime before June 25, 1998[1], after resolution of an objection by an agreed Order entered May 19, 1998.

4. On September 29, 1998, Johnson filed a Transmittal of Unclaimed Funds from the Class 3A and 3B Distributions and deposited $236,519.63 into the registry of the Court. The funds consisted of unnegotiated distribution checks. On or about November 12, 1998, Debtor filed an application seeking the unclaimed funds under the provisions of 11 U.S.C. §§ 347 and 1143, and 28 U.S.C. § 2041 *et seq*. The U. S. Trustee filed a timely Objection to the Application, etc. On November 11, 1998, true and correct copies of the Notice to Parties in Interest of Application with Brief for Order Directing Payment of Funds to Debtor/Claimant Pursuant to 11 U.S.C. Sections 347 and 1143 and 28 U.S.C. Sections 2041 *et seq*., filed in this case on November 12, 1998, were mailed to all parties in interest.

5. After noting that the five-year period envisioned by §1143 had expired on March 16, 1993, and also that §1143 is triggered only when a Plan requires an <u>act</u> as a condition to participation; and further noting the extended delay after the Plan approval in 1986 and the attempted distribution in May, 1998; the Bankruptcy Court found that § 1143 did not apply to the situation presented. The Bankruptcy Court, relying on §§ 105 and 1142(b) of Title 11, for the exercise of its discretion, found that a reasonable time for distribution would be 180 days from the entry of its Order Denying Payment of Unclaimed Funds to Debtor/Claimant; i.e., 180 days from October 20, 1999.    In reaching its decision, the Bankruptcy Court concluded that the "creditors who have had nothing to do but to await their distribution are entitled to collect their funds within

---

[1] The Transmittal of Unclaimed Funds recites that "Ninety (90) days have passed since the final distribution to creditors was made in this case."

a reasonable time from the attempted distribution, after which unclaimed funds would revert to the Debtor/Claimant."

    6. <u>Issues as Presented by the Parties</u>.

Debtor states her "Issues Presented" as follows:

(1) Did the Bankruptcy Court err in denying Mary Frances Antweil's Application for Order directing Payment of Funds to Debtor/Claimant?

(2) Did the Bankruptcy Court err in finding that creditors have until 180 days from entry of the Order appealed from to collect and negotiate distribution checks?

(3) Did the Bankruptcy Court err in using sections 105 and 1142(b) of the Bankruptcy Code to impose a "reasonable amount of time" to collect and negotiate distribution checks?

(4) Did the Bankruptcy court err in setting 180 days from the entry of the Order as a reasonable amount of time to collect and negotiate distribution checks?

Appellee United States Trustee states the issue as follows:

The Bankruptcy Court did not err in ruling that 11 U.S.C. §1143 is not applicable in this case and in allowing 180 days for the creditors to claim their distribution checks before the unclaimed funds become the property of the Debtor Mary Frances Antweil.

    7. Debtor contends that §1143 applies in this instance and that the "act" of cashing a check is a required condition for participation under the Plan. Debtor attempts to distinguish <u>In re Goldblatt</u>, 132 B.R. 736 (Bankr. N.D.Ill. 1991), and <u>In re The Signature Group</u>, 172 B.R. 501(Bankr.D.R.I.1994), pointing out that creditor committees were involved in those cases and that there were no acts required of the creditors themselves as a condition to Plan participation under §§347(b) and 1143. The creditors' "only function was to wait to receive their money" in those cases.

8. In its Order Authorizing Release of and Leave to Distribute Funds Held in Court Registry entered February 4, 1993, which dealt with a distribution at that time, the Bankruptcy Court ordered that "the Trustee shall be entitled to stop payment on all checks distributed pursuant to this Order 65 days after the mailing of the check to the person entitled thereto at the address last known to the Trustee and, after deducting costs of stopping payment of such checks, all remaining money is to be paid to the Consolidated Antweil Bankruptcy Estates and held on a general unrestricted basis."

9. In Debtor's Plan filed April 7, 1988, there is no mention of payment to creditors by check or of the required negotiating of checks by creditors.  In ¶¶ 1.07 and 1.08 of the Plan, "payment" is mentioned; in ¶1.08 and in Article II of the Plan "distribution" is mentioned; and in Article III, and ¶¶ A.1., A.2., and C.1., the payments mentioned are to be made in "cash." The Plan does not state a requirement of the negotiating of a check as an "act" which would be "a condition to participation in distribution under the plan" as required under § 1143.

10. 11 U.S.C. 347(b) deals with "property remaining unclaimed at the expiration of the time allowed in a case ...for the presentation of a security or the performance of any other act as a condition to the participation in the distribution under any plan confirmed ....." As has been noted above no further act was required of a creditor for participation under the Plan. Additionally, since the Plan was operating outside the statutory limits, the time set for presentation would necessarily be a "reasonable time" set by the Bankruptcy Court. Debtor had no substantive rights which were abrogated by the Bankruptcy Court.  Under the circumstances of this case and considering the time intervals which were involved between confirmation of the Plan and the distributions made to

creditors; the deadline set for allowing creditors to seek their distribution was reasonable and was a proper exercise of the discretion of the Bankruptcy Court.

11. The Bankruptcy Court did not err in its Order of October 20, 1999.

.  **RECOMMENDED DISPOSITION**

The Order of the Bankruptcy Court entered October 20, 1999, should be affirmed and this appeal should be dismissed. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE

.